FRANCIS DALEY ET AL. *v.* WOODROW W. GAITOR ET AL.
FRANCIS DALEY ET AL. *v.* CITY OF HARTFORD
(5932)

BORDEN, DALY and NORCOTT, Js.

Argued May 11—decision released September 27, 1988

*Ronald E. Cassidento,* with whom, on the brief, was *Eric Carlson,* for the appellants (plaintiffs).

*Richard M. Cosgrove,* deputy corporation counsel, with whom, on the brief, were *Richard H. Goldstein,* former corporation counsel, and *H. Maria Cone,* assistant corporation counsel, for the appellees (defendants in the first case, defendant in the second case).

NORCOTT, J. The plaintiffs[1] bring a joint appeal from the trial court's judgments in their actions for injunctive relief and breach of contract. The trial court denied the injunction in the first case and directed the verdict for the defendant city in the second case.[2] On appeal

---

[1] The plaintiffs are present and former police sergeants in the Hartford police department who applied for the position of police lieutenant in 1981.

[2] The two cases were consolidated for trial. In the first case, the plaintiffs sought an injunction to restrain the city officials from administering an oral examination to any police officers who had not scored in the top 50 percent of those who had taken a written examination. The case was tried to the court, *O'Neill, J.,* which rendered judgment for the defendants. The plaintiffs also appealed from that judgment.

At oral argument of that appeal, however, counsel for the plaintiffs conceded that, since the injunction had been denied on February 11, 1987, and the promotions had long since been effected, no practical relief could be given to the plaintiffs by way of injunctive relief even if this court should conclude that the trial court was in error in denying injunctive relief. "It

from the second case, the plaintiffs aver that the trial court erred (1) in directing a verdict for the city and rendering judgment thereon in lieu of granting the plaintiffs' motion to strike the city's special defense, and (2) in refusing to render judgment for the plaintiffs. We find error.

This litigation arises out of the 1981 promotional process for the position of lieutenant in the Hartford police department. In 1981, a written promotional announcement was circulated apprising prospective candidates of several openings for the position of police lieutenant. The promotional announcement provided that the position was open to all persons who had attained the rank of police sergeant. The announcement further provided that the applicants were to take a written examination and that at least 50 percent of those who took the written examination would be allowed to move to the second stage, an oral examination.

After the written examination was given in this case, it was determined that only those officers who had attained a score of 76 percent or better would be allowed to take the oral examination. In tabulating the test results, however, the city personnel director found that the results did not conform to the federal Uniform Guidelines on Employee Selection, 29 C.F.R. § 1067 et seq., since there was an adverse impact on the minority applicants. Thereafter, the city personnel director took steps to alleviate the adverse impact of the examination. In conjunction with the city manager, he allowed any sergeant who took the written examination to take the oral examination as well. Thereafter, all persons who took the examination were rated.

is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. *Waterbury Hospital* v. *Connecticut Health Care Associates,* [186 Conn. 247, 249, 440 A.2d 310 (1982)]." *Platt* v. *Newman,* 13 Conn. App. 205, 208, 534 A.2d 1259 (1988). Accordingly, we dismiss the appeal as to the first case as moot.

As a result, three individuals who had not attained a score of 76 percent on the written examination were ultimately promoted to the rank of lieutenant in lieu of the plaintiffs. The plaintiffs brought suit alleging a breach of contract. After a trial to the jury, the court directed the jury to return a verdict for the defendants.

We note as a threshold matter that the plaintiffs did not move to set aside the verdict against them. Practice Book § 4000[3] requires a party who wishes to appeal from a directed verdict to file a timely motion to set aside the verdict pursuant to Practice Book § 320.[4] See also General Statutes § 52-228b.[5] A party may then

---

[3] Practice Book § 4000 provides: "RIGHT OF APPEAL

"If a party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, that party may appeal from the final judgment of the court or of such judge, or from a decision setting aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in General Statutes §§ 8-8, 8-9, 8-28 and 8-30."

[4] Practice Book § 320 provides: "——MOTIONS IN ARREST OF JUDGMENT, TO SET ASIDE VERDICT OR FOR NEW TRIAL

"Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not open; provided that for good cause the court may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

[5] General Statutes § 52-228b provides: "SETTING ASIDE OF VERDICT IN ACTION CLAIMING MONEY DAMAGES. No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

appeal from the denial of that motion to set aside the verdict. "We have stated repeatedly that such a motion is indispensable to ensure full appellate review of claims of error in civil jury cases. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 195, 520 A.2d 208 (1987); *Kolich* v. *Shugrue,* 198 Conn. 322, 325, 502 A.2d 918 (1986); *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981); *Gordon* v. *Feldman,* 164 Conn. 554, 557, 325 A.2d 247 (1973) . . . . In the absence of a motion to set aside the verdict, we consider the plaintiff[s'] claims under the plain error doctrine, which provides that the Supreme and Appellate Courts 'may in the interests of justice notice plain error not brought to the attention of the trial court.' Practice Book § 4185; *Pietrorazio* v. *Santopietro,* supra, 514–15." *Dunham* v. *Dunham,* 204 Conn. 303, 311–12, 528 A.2d 1123 (1987).

Although generally "plain error" review is limited to instances involving confidence in the fairness and integrity of the adjudicative process; *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223 (1987); the doctrine essentially invokes the discretion of the court. *Finley* v. *Aetna Life & Casualty Co.,* supra, 196. One standard for this appellate discretion is whether the issue is of importance to the development of the law of the state, is vital to the proper resolution of the case, and was sufficiently presented to the trial court initially, albeit not by way of a motion to set aside the verdict, so that appellate consideration of it does not amount to ambuscade of the trial court. *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 402–403, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987). It is this latter branch of the plain error doctrine which we invoke here.

The plaintiffs first claim that the trial court erred in directing a verdict for the city and in failing to strike

the city's special defense. For the purposes of review, we will treat these claims independently. We first discuss the propriety of the directed verdict.

"The general rule in Connecticut is that a 'trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion.' *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). In our review of the trial court's directed verdict in favor of the defendant, we must consider the evidence in the light most favorable to the plaintiffs. *Pinto* v. *Spigner,* 163 Conn. 191, 193, 302 A.2d 266 (1972)." *Meizoso* v. *Bajoros,* 12 Conn. App. 516, 518, 531 A.2d 943 (1987). In this case, we conclude that the trial court committed plain error in directing a verdict for the city.

The plaintiffs' principal claim at trial was for breach of contract. In accordance with this claim, the plaintiffs introduced evidence that they were members of the International Brotherhood of Police Officers (IBPO). They produced further evidence that the IBPO had entered into a contract with the city of Hartford which provided that all promotions were to be in accordance with the personnel rules and regulations of the city of Hartford. Rule VI, § 3, of the personnel rules provides in pertinent part that "[s]ound measurement techniques and procedures shall be used in rating the results of tests and determining the relative ranking of the candidates. In all examinations the minimum rating by which eligibility may be achieved shall be established by the Director of Personnel. Such minimum rating shall also apply to the ratings of any part of the test. Candidates shall be required to attain at least a minimum rating on each part of the test in order to receive a passing grade or to be rated on the remaining parts of the test. The final earned rating of the competitor shall be determined by averaging the earned

rating on each part of the examination in accordance with the weights established for each part prior to the date of the examination."[6]

The city contended, however, in its special defense that regardless of the existence of any contract between it and the plaintiffs its actions were justified because they were done only so that the test results would conform to federal antidiscrimination laws. The city contended that compliance with federal antidiscrimination laws supersedes any contractual rights the plaintiffs may have had.

In addressing this claim, we first note that discrimination continues to be a problem in the American workplace. *Goodman* v. *Lukens Steel Co.*, 482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987); *Connecticut* v. *Teal*, 457 U.S. 440, 102 S. Ct. 2525, 73 L. Ed. 2d 130 (1982). This is true despite the myriad of laws designed to protect against such discrimination. U.S. Const., amend. XIV; Civil Rights Act of 1964 §§ 701–718, 42 U.S.C. §§ 2000e–2000e17; 42 U.S.C. § 1981; Conn. Const., amend. XXI; General Statutes §§ 46a-60, 46a-61 and

---

[6] The plaintiffs also claim that a contract was created by virtue of the promotional pronouncement which provided that "at least 50 percent" of all persons who take the written examination will be allowed to take the oral examination. The plaintiffs contend that this pronouncement established a contract between the city and the potential test takers that prevented the city from allowing all who took the written examination to take the oral examination. We disagree. First, we note that the plaintiff's claim is belied by the express words of the pronouncement which provided that "at least" 50 percent of the people who took the written examination could be allowed to take the oral examination. The words "at least" indicate that more than 50 percent of the examination takers would move on to take the oral examination. Second, we note that even if the pronouncement had represented that the number of people who could take the oral examination would be limited, such representations would not have been sufficiently definite or promissory to support contractual liability. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 214–15, 520 A.2d 217 (1987).

46a-69 through 46a-70. In this case, the city took steps to correct what it perceived to be a discriminatory promotional process.

The city's conclusion that the promotional process used in this case was discriminatory was based on title VII and the federal Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 et seq. Under the provisions of the guidelines, evidence that the selection rate for any race, sex or ethnic group eligible for promotion is less than four-fifths of the rate for the group with the highest rate will be generally regarded as evidence of adverse impact. 29 C.F.R. § 1607.4D. Courts have held that the evidence that the selection rate for any group is less than four-fifths of the selection rate of any other group constitutes prima facie evidence of discrimination. *Bushey* v. *New York State Civil Service Commission,* 733 F.2d 220, 224–25 (2d Cir. 1984), and cases cited therein. In this case, the rate of minorities who scored in the top 50 percent of those taking the written exam was less than four-fifths of the rate of white applicants who attained such a score.

Accordingly, the city voluntarily took steps to alleviate the adverse impact of the written examination by allowing all persons who took the written examination to take the oral examination as well. This action was taken in accordance with the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1067.66 (2), which provides that any promotional process in which there is an adverse impact on the promotional opportunities of any ethnic group, race or sex is considered discriminatory unless the process has been validated or another method is used to "modify the procedure to eliminate the adverse impact."

The United States Supreme Court has long recognized that voluntary compliance is the preferred means of achieving the objectives of title VII. *Alexander* v.

*Gardiner-Denver Co.,* 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974); *Albemarle Paper Co.* v. *Moody,* 422 U.S. 405, 417–18, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975). " 'The principle of nondiscrimination in employment because of race, color, religion, sex or national origin, and the principle that each person subject to Title VII should take voluntary action to correct the effects of past discrimination and to prevent present and future discrimination without awaiting litigation, are mutually consistent and interdependent methods of addressing social and economic conditions which precipitated the enactment of Title VII. Voluntary affirmative action to improve opportunities for minorities and women must be encouraged and protected in order to carry out the Congressional intent embodied in Title VII.' [29 C.F.R.] § 1608.1 (c) (footnote omitted)." *International Assn. of Firefighters* v. *Cleveland,* 478 U.S. 501, 516, 106 S. Ct. 3063, 92 L. Ed. 2d 405 (1986).

In *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983), however, the United States Supreme Court upheld an arbitrator's decision that a company which had voluntarily complied with title VII by entering into a conciliation agreement with the Equal Employment Opportunity Commission was liable for back pay damages caused by its breach of the collective bargaining agreement. In so holding, the court noted that upholding such an award did not inappropriately affect the policy of voluntary compliance with title VII because "[a]bsent a judicial determination, the [Equal Opportunity Employment] Commission, not to mention the Company, cannot alter the collective-bargaining agreement without the Union's consent." Id., 771. We find the rationale expressed in *W. R. Grace & Co.* to be controlling in this case. Accordingly, we find that the city's actions in complying with title VII, while commendable, do not neces-

sarily relieve the city of any contractual obligations it might have had under the collective bargaining agreement with the plaintiffs.[7]

We still must determine whether the plaintiffs had any contractual rights under the collective bargaining agreement to have the testing done in a certain manner.

As the Second Circuit of Appeals held in *Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117, 1127 (2d Cir. 1983), absent a specific provision in the collective bargaining agreement mandating certain testing procedures, "[n]on-minorities do not have a legally protected interest in the *mere* expectation of appointments which could only be made pursuant to presumptively discriminatory employment practices. . . . Accordingly, the legal rights of non-minorities generally are not adversely affected by *reasonable* and *lawful* race-conscious hiring or promotional remedies, whether such remedies are imposed by court order following litigation on the merits or are created by voluntary agreement between the parties." (Emphasis in original; citations omitted.) Id., 1126.

In this case, whether the collective bargaining agreement mandated certain testing procedures was a question of fact for the jury to determine. The plaintiffs produced evidence tending to show that the setting of a cutoff score on the written examination was mandatory. Other evidence was produced, however, which tended to show that the setting of a cutoff score was not mandatory. What is required then is an interpretation of the terms of the collective bargaining agree-

---

[7] In reaching this decision, we in no way intend to discourage voluntary compliance with title VII. Voluntary compliance continues to be the preferred means of enforcing title VII. Perhaps, in the future, situations such as this can be avoided if employers consult with unions before undertaking race conscious remedies.

ment. We have long held that " '[t]he interpretation of . . . contracts, is principally a question of the intention of the parties, a question of fact to be determined by the trier of facts.' *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981)." *Rodziewicz* v. *Giguere,* 5 Conn. App. 293, 295–96, 497 A.2d 1025 (1985). Accordingly, we find that the trial court committed plain error in taking this case from the jury's consideration.

The plaintiffs next claim that in lieu of granting a directed verdict for the city the trial court should have granted their motion to strike the city's special defense. We disagree.

The record reveals that the plaintiffs filed their reply to the city's special defense on February 3, 1987. Seven days later, the plaintiffs filed a motion to strike the special defense. Practice Book § 112,[8] which provides for the order of pleadings after the complaint has been filed, specifically provides that the plaintiff's motion to strike a defendant's answer shall be filed before the plaintiff's reply to any special defenses. A party which files the pleadings in the inverse order is deemed to have waived the filing of the motion to strike. Practice Book § 113.[9] We do not find that the court committed plain error with respect to this claim.

---

[8] Practice Book § 112 provides: "The order of pleading shall be as follows:

"(1) The plaintiff's complaint.

"(2) The defendant's motion to dismiss the complaint.

"(3) The defendant's request to revise the complaint.

"(4) The defendant's motion to strike the complaint.

"(5) The defendant's answer (including special defenses) to the complaint.

"(6) The plaintiff's request to revise the defendant's answer.

"(7) The plaintiff's motion to strike the defendant's answer.

"(8) The plaintiff's reply to any special defenses."

[9] Practice Book § 113 provides: "In all cases, when the court does not otherwise order, the filing of any pleading provided for by the preceding section will waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in that section."

The plaintiffs finally claim that they are entitled to judgment in this case because the city never pleaded or introduced evidence that it could not legally comply with its contractual obligations to the appellant. We disagree.

As we noted above, there is an issue of fact left to be determined by the jury. That issue is whether the city has any contractual obligations to the plaintiffs at all. Until that question is resolved, judgment cannot be rendered for either side.

There is error, the judgment is set aside in the second case and the case is remanded for a new trial. The appeal as to the first case is dismissed as moot.

In this opinion the other judges concurred.