WALTER GOLEMBESKI ET AL. *v.* METICHEWAN
GRANGE NO. 190 ET AL.
(7776)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 5, 1989—decision released February 20, 1990

*Robert J. Guendelsberger,* with whom, on the brief, was *James K. Smith,* for the appellants (plaintiffs).

*Anthony M. Fitzgerald,* for the appellee (defendant John Lillis).

O'CONNELL, J. The plaintiffs appeal from a judgment rendered after a directed verdict in favor of the defendant John Lillis.[1] The plaintiffs' action alleged that the defendant tortiously interfered with their opportunity to purchase real property from the Metichewan Grange (Grange).

The plaintiffs claim that the court erred (1) in granting the defendant's motion for a directed verdict when there was evidence from which the jury could reasonably have found in favor of the plaintiffs, (2) in granting the motion before the plaintiffs had rested their case. We find no error.

The Grange is a fraternal organization that owns a meeting hall in New Milford. The plaintiffs submitted a written offer to buy the property for $150,000, and the Grange retained the defendant, an attorney, to represent and advise it in the potential sale. The defendant expressed several reservations about the sale. Specifically, he was concerned about the adequacy of the sale price as well as the Grange's compliance with its bylaws concerning disposition of assets.

In the course of handling the matter, the defendant advised the master of the Grange that he might be interested in forming a partnership and purchasing the property himself. He made it clear that if he became a purchaser he would withdraw from representing the Grange and another attorney would have to be retained to handle the sale. Subsequently, the person with whom

---

[1] The plaintiffs withdrew the action against the Metichewan Grange immediately before the commencement of the presentation of evidence. Therefore, when we refer to the defendant we mean John Lillis.

the defendant had briefly considered forming a partnership offered, on his own behalf, $180,000 for the property. The defendant took no part in this offer nor did he ever make any offer to purchase the property. The defendant advised the Grange to reject both the $180,000 and $150,000 offers, and to place the property for sale on the open market. The Grange accepted this advice and rejected both offers.

As a threshold matter, we note that the plaintiffs failed to file a motion to set aside the verdict under Practice Book § 320. "In the absence of a motion to set aside the verdict, we consider the plaintiff[s'] claims under the plain error doctrine, which provides that the Supreme and Appellate Courts 'may in the interests of justice notice plain error not brought to the attention of the trial court.' Practice Book § 4185 . . . ." *Dunham* v. *Dunham,* 204 Conn. 303, 311, 528 A.2d 1123 (1987); *Daley* v. *Gaitor,* 16 Conn. App. 379, 383, 547 A.2d 1375, cert. denied, 209 Conn. 824, 550 A.2d 430 (1988). While we recognize that the plain error doctrine should be invoked sparingly; *State* v. *Scott,* 10 Conn. App. 347, 353, 522 A.2d 1245, cert. denied, 204 Conn. 824, 528 A.2d 1152 (1987); here, because the claimed error implicates the fairness and integrity of, and public confidence in, judicial proceedings and attorneys, it is a proper matter for such review.

I

The plaintiffs' first claim that they had introduced sufficient evidence to require submission of the case to the jury and, therefore, the trial court erred in directing a verdict for the defendant. The general rule in Connecticut is that "[a] trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion." *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); see also *Daley* v. *Gaitor,* supra, 384. When this court reviews a

directed verdict for the defendant, the evidence must be considered in the light most favorable to the plaintiff. *Daley* v. *Gaitor,* supra.

The central question is whether a lawyer who advises a client that it is not legally bound to sell property can be held liable to a disappointed prospective purchaser for tortious interference with a business expectancy. An action for tortious interference with a business expectancy is well established in Connecticut.[2] The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable promise is enough. Id. "A cause of action for tortious interference with a business expectancy requires proof 'that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously.' " (Citations omitted.) *Jones* v. *O'Connell,* 189 Conn. 648, 660, 458 A.2d 355 (1983). It is also true, however, that "not every act that disturbs a contract or business expectancy is actionable." *Blake* v. *Levy,* 191 Conn. 257, 260, 464 A.2d 52 (1983). A defendant is guilty of tortious interference if he has engaged in "improper" conduct. Id., 261; see 4 Restatement (Second), Torts §§ 766, 766B, 767 (1979). "[T]he plaintiff [is required] to plead and prove at least some improper motive or improper means." *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 279, 464 A.2d 57 (1983); *Blake* v. *Levy,* supra, 262.[3]

---

[2] The action was first recognized in *Bulkley* v. *Storer,* 2 Day (Conn.) 531, 536 (1807).

[3] 4 Restatement (Second), Torts § 767 states that the following factors should be considered when assessing whether an actor has "improperly" interfered with a contract or prospective contractual relation of another:

"(a) the nature of the actor's conduct,

"(b) the actor's motive,

"(c) the interests of the other with which the actor's conduct interferes,

"(d) the interests sought to be advanced by the actor,

The plaintiffs argue that the defendant improperly interfered with their expectancy of a profit by advising the Grange that it was not required to consummate the agreement with the plaintiffs. They claim that this case presents a situation where the defendant attorney, motivated by self interest, prevented the completion of a real estate transaction between his client and the plaintiffs. The trial court's decision, they argue, sanctions "insider trading" by attorneys in real estate transactions.

The defendant, on the other hand, contends that he acted properly in giving honest advice to the Grange as part of his obligation to counsel his client on the sale. See *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 202, 374 A.2d 179 (1977), citing 4 Restatement (Second), Torts § 772 (1979) (no liability for tortious interference when party gives honest advice within the scope of a request for advice). We agree with the trial court that the plaintiffs failed to produce sufficient evidence to justify sending the case to the jury.

Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort. " '[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' " *Blake* v. *Levy,* supra, 262, quoting *Top Service Body Shop, Inc.* v. *Allstate Ins. Co.,* 283 Or. 201, 209, 582 P.2d 1365 (1978). The plaintiffs introduced no evidence to prove that the defendant was guilty of fraud, misrepresentation, intimidation, molestation or malice. Although the plaintiffs empha-

"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

"(f) the proximity or remoteness of the actor's conduct to the interference and

"(g) the relations between the parties."

size that the defendant expressed some interest in purchasing the property himself, they failed to offer any evidence that he delayed the completion of, or otherwise interfered with, their deal so that he could make his own bid. While the defendant fully apprised the Grange that he was interested in a possible purchase, he never took any further steps toward making an offer. The record indicates that the second offeror acted solely on his own behalf when he placed his bid of $180,000 before the Grange and was not acting in concert with the defendant.

While it is true that the defendant did "interfere" in that he advised the Grange not to sell to the plaintiffs, "[e]very act of interference is not . . . tortious." *Blake* v. *Levy,* supra, 261. To conclude otherwise could possibly expose every attorney to liability for good faith advice to his client and could at least put a chill on the willingness of attorneys to advise clients not to proceed with questionable undertakings. We conclude that the trial court did not commit plain error in directing a verdict for the defendant.

## II

In their second claim of error, the plaintiffs assert that the trial court granted the motion for a directed verdict before they had rested. The record does not support this claim.

There is no error.

In this opinion the other judges concurred.