[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE PLAINTIFF'S REPLY AND FIRST SPECIAL DEFENSE TO DEFENDANT'S COUNTERCLAIM (#133)
I. FACTS
The following facts are alleged in the complaint. The original plaintiff, Citytrust, filed an action in the Superior Court against Clark Fray Construction Co. ("Clark Fray"), Clark Sewer Construction Co., Phase II Associates, Inc., Robert G. Clark and Marjorie S. Clark on June 25, 1990, seeking to foreclose on certain mortgages held by Citytrust.
On or about April 8, 1988, Clark Fray, Robert G. Clark and Marjorie S. Clark became indebted to Citytrust in the principal amount of $4,500,000.00, as evidenced by a promissory note (the "note") dated April 8, 1988. Also on April 8, 1988, Clark Fray executed a mortgage deed (the "mortgage") in favor of Citytrust mortgaging certain premises owned by it and situated in Haddam, Connecticut (the "subject premises"). This mortgage was recorded on April 8, 1988 in the Town of Haddam Land Records. Also on April CT Page 4052 8, 1988, Citytrust recorded an assignment of leases, a conditional assignment of licenses and permits and a UCC financing statement executed by Clark Fray in favor of Citytrust in the Town of Haddam Land Records. Citytrust alleges that the note and mortgage are due and seeks to foreclose the mortgage.
Citytrust recorded a lis pendens against the subject premises in the Town of Haddam Land Records on June 4, 1990.
On April 23, 1991, the court, O'Connell, J. granted the motion of Orsine-Cotter-Carson, Inc. ("OCC") to be made a party defendant. OCC alleges in its motion that by virtue of an agreement with Clark Fray, it supplied engineering, planning and surveying services and furnished materials for the improvement and site development of the subject premises. OCC alleges that it acquired an interest in the subject premises by virute of a mechanic's lien filed in the Town of Haddam Land Records on October 22, 1990 (the "mechanic's lien"). OCC alleges that the commencement date of the mechanic's lien is January 11, 1988 and that, therefore, the mechanic's lien is senior to Citytrust's mortgage. The principal amount of the mechanic's lien is $106,540.36. The mechanic's lien, appended to OCC's motion, states that OCC ceased rendering services and furnishing materials on October 2, 1990.
On May 3, 1991, Citytrust amended its complaint to allege that the interest of OCC is subsequent to that of Citytrust's mortgage.
On May 30, 1991, OCC filed an answer denying Citytrust's allegation that Citytrust's mortgage has priority over OCC's mechanic's lien, a special defense alleging that its mechanic's lien has priority over Citytrust's mortgage and a counterclaim against Citytrust and cross claim against Clark Fray both seeking a foreclosure of its mechanic's lien.
On July 25, 1991, Citytrust filed a reply denying OCC's special defense, an answer and special defenses to OCC's counterclaim.
On August 22, 1991, OCC filed replies denying Citytrust's special defenses to OCC's counterclaim.
On August 29, 1991, the court, Katz, J., ordered the Federal Deposit Insurance Corporation ("FDIC") substituted as a party plaintiff in place of Citytrust. CT Page 4053
On October 25, 1991, the FDIC filed a reply to OCC's special defense alleging that OCC's special defense is barred by 12 U.S.C. § 1823 (e)[1] because OCC failed to allege the existence of a written agreement between Citytrust and OCC which tends to diminish the interest of the FDIC in mortgages obtained by the FDIC from Citytrust. Also on October 25, 1991, the FDIC filed an answer and six special defenses to OCC's counterclaim. The first special defense alleges that OCC's counterclaim is barred by 12 U.S.C. § 1823
(e) because OCC failed to allege the existence of a written agreement between Citytrust and OCC which tends to diminish the interest of the FDIC in mortgages obtained by the FDIC from Citytrust.
OCC now moves to strike the FDIC's reply to OCC's special defense and the FDIC's first special defense to OCC's counterclaim. OCC alleges that the FDIC's reply and first special defense are legally insufficient because OCC's mechanic's lien is not the type of "agreement" which falls within the scope of 12 U.S.C. § 1823 (e).
II. DISCUSSION
"The motion to strike is used to test the legal sufficiency of a pleading." Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989), citing Practice Book Sec. 152. The pleadings susceptible to a motion to strike are the "complaint, counterclaim, cross-complaint, prayer, answer [and] special defense." Deutsche Bank Co. v. Hermann,4 CSCR 771 (September 28, 1989, Cioffi, J.), citing Practice Book Sec. 152. In reviewing the legal sufficiency of a pleading, the trial court must "assume the truth of the facts alleged and construe them in the light most favorable to sustaining the sufficiency of the [pleading]. Michaud v. Wawruck,209 Conn. 407, 408, 551 A.2d 738 (1988)." Bouchard v. People's Bank, 219 Conn. 465, 467, 594 A.2d 1 (1991). The motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985) (emphasis in original). "[I]f facts provable under the allegations would support a defense or a cause of action, the [motion to strike] must fail." Ferryman v. Groton, supra, 142 (citations omitted).
1. FDIC's Reply to OCC's Special Defense
It is decided that the Practice Book does not recognize the use of a motion to strike to attack the legal sufficiency of a reply to a special defense. See Bouchard CT Page 4054 v. People's Bank, supra, 468 n. 3, quoting Practice Book Sec. 152; see also Daley v. Gaitor, 16 Conn. App. 379, 389
n. 8, 547 A.2d 1375, cert. denied, 209 Conn. 824,552 A.2d 430 (1988), quoting Practice Book Sec. 112. It is accordingly found that OCC's motion to strike is improper insofar as it attacks the legal sufficiency of the FDIC's reply to OCC's special defense.
2. FDIC's Special Defense to OCC's Counterclaim
OCC argues that the mechanic's lien on which it claim rests is not an "agreement" for purposes of 12 U.S.C. § 1823
(e). OCC argues that 12 U.S.C. § 1823 (e) is inapplicable here because it applies only to agreements. OCC notes that the only agreement involved in this dispute is the agreement between it and Clark Fray to render services and furnish materials and OCC began to perform this contract approximately four months before Clark Fray and Citytrust executed the note and mortgage involved in this suit. Although OCC cites a number of cases in support of its argument, only Resolution Trust Corporation v. Ford Mall Associates Limited Partnership, No. 4-89-971, slip op. (D. Minn. Jan. 31, 1992), is directly on point.[2]
The FDIC argues that OCC's claim is dependent upon proof of the existence of an agreement between OCC and Clark Fray. The FDIC also argues that 12 U.S.C. § 1823 (e) forecloses OCC's counterclaim because the fact that OCC claims a prior interest in the subject premises demonstrates that the agreement, if proven, would tend to diminish the interest of the FDIC in the subject premises. Although the FDIC cites several cases in support of its argument, only Bateman v. FDIC, 766 F. Sup. 1194 (D. Me. 1991), is directly on point.
12 U.S.C. § 1823 (e) codifies the D'Oench, Duhme doctrine. Federal Deposit Ins. Corp. v. Aetna Cas. Sur. Co., 947 F.2d 196, 200 (6th Cir. 1991); Federal Deposit Ins. Corp. v. Bernstein, 944 F. Sup. 101, 107 (2nd Cir. 1991). Application of 12 U.S.C. § 1823 (e) and the D'Oench, Duhme doctrine typically involves secret side agreements between failed banks and their borrowers:
 [T]he Supreme Court in D'Oench, Duhme Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), held that there was "a federal policy to protect respondent [FDIC], and the public fund which it administers, against misrepresentations as to the CT Page 4055 securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans." Id., at 547, 62 S.Ct. at 679. The petitioner in D'Oench had argued that, at the time he made the note with the bank, the bank promised that it would not enforce the note. The Court held that this "secret agreement" could not be used as a defense, id., at 460, 62 S.Ct. at 680, because "it would tend to deceive the banking authorities." Langley v. FDIC, 484 U.S. 86, 92, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).
Federal Deposit Ins. Core. v. Aetna Cas. Sur. Co., supra, 200.
 The D'Oench, Duhme doctrine has been expanded through the development of federal common law to apply to situations other than those involving secret agreements. See Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1106 (11th Cir. 1990). It has been applied to bar the defense of failure of consideration where the FDIC had no knowledge of such a claim and acted in good faith in acquiring assets. See FDIC v. Leach, 772 F.2d 1262, 1267
(6th Cir. 1985). Personal guaranties have been among the assets affected by the doctrine. See Twin Constr., Inc., v. Boca Raton, Inc., 925 F.2d 378, 382
(11th Cir. 1991). Section 1823(e) itself has been interpreted to prohibit the assertion against the FDIC of bank misrepresentations including the execution of a note and guaranty. See Langley v. FDIC, [supra], 91-93, 108 S.Ct. [at] 401-02.
. . .
Federal Deposit Ins. Corp. v. Bernstein, supra, 108.
In Bateman v. Federal Deposit Ins. Corp., supra, a mechanic's lienor who had performed construction work for a borrower of an insolvent bank argued that its mechanic's lien against the borrower was entitled to priority CT Page 4056 over certain negotiable instruments made by the borrower and held by a "bridge bank" and the FDIC because the mechanic's lienor was not itself a borrower of the insolvent bank. Bateman v. Federal Deposit Ins. Corp., supra, 1201. The Bateman court held that the contract between the mechanic's lienor and the borrower constituted an agreement which must meet the requirements of 12 U.S.C. § 1821 (n)(4)[3]
in order to be valid against the bridge bank or the FDIC. Id. First, the Bateman court determined that "the plain language of the governing statutory provisions does not evidence any distinction between borrowers and nonborrowers of any kind suggested." Id. Second, the Bateman court held that the mechanic's lien was "dependent upon the existence of a contract or implied contract between [the failed bank] and [the mechanic's lienor]." Third, the Bateman court held that "[t]his contract — namely, payment in exchange for construction work — is the agreement to which the court must look to determine whether the requirements of the statute are statisfied." Id. Fourth, the Bateman court found that "[t]he agreement is well within the Langley Court's definition of those `agreements' which must conform to the requirements of section 1821(n)(4): `a scheme or arrangement that is likely to mislead banking authorities. . . .'484 U.S. at 92-93, 108 S.Ct. at 402." Id. The Bateman court concluded that because the mechanic's lienor failed to offer any evidence that the contract between the mechanic's lienor and the borrower was in writing, that the mechanic's lienor was "estopped from asserting the mechanic's lien as a defense or an affirmative claim against [the bridge bank]." Id. The Bateman case is on appeal to the United States Circuit Court for the First Circuit. Arguments of the appeal were heard on January 6, 1992; no decision has been rendered yet.
The court in Resolution Trust Corp. v. Ford Mall Associates Limited Partnership, supra, which is factually similar to Bateman and the present case, explicitly rejected the Bateman court's holding. The Ford Mall court held that a mechanic's lienor is not estopped from asserting the priority of its mechanic's lien regardless of whether the agreement between the mechanic's lienor and the borrower of an insolvent bank taken over by the Resolution Trust Corporation ("RTC") meets the requirements of12 U S.C. 1823(e). Id., 17. The Ford Mall court, stating that "[t]he Langley Court did not suggest that D'Oench, Duhme was designed to invalidate interests that exist wholly independently of a party's obligation to repay the bank on a note or other asset," held that the term "agreement" as used in12 U.S.C. § 1823 (e) does not include an agreement between a mechanic's lienor and a borrower of an insolvent bank. Id., 13. Additionally, the Ford Mall court stated that mechanic's CT Page 4057 liens "do not arise solely from construction contracts but also depend on the operation of state law." Id., 14. The Ford Mall court stated that "by holding that the mechanics' liens are agreements within D'Oench, Duhme, the court would effectively eliminate the agreement requirement because some sort of `agreement' could be found regarding virtually every asset of a failed bank." Id., 14-15.
It is decided that both the FDIC and the Bateman court have implicitly and improperly bootstrapped the state mechanic's lien statute and the mechanic's lien resulting thereby together with the contract between the mechanic's lienor and the insolvent bank's borrower for the purpose of determining whether the "agreement" constitutes "a scheme or arrangement that is likely mislead banking authorities." Both the mechanic's lien statute and the lien itself are separate entities which exist apart from the agreement between OCC and Clark Fray and are not themselves agreements.[4] It is further decided that because12 U.S.C. § 1823 (e) is limited to agreements, it is the agreement between OCC and Clark Fray, and only this agreement, which must be examined under the Langley court's definition of "agreement" to determine whether it constitutes "a scheme or arrangement that is likely mislead banking authorities."[5]
Neither the FDIC nor the Bateman court have explained how a simple contract for the provision of services in exchange for payment constitutes "a scheme or arrangement likely to mislead banking authorities." It is found that the agreement between OCC and Clark Fray to exchange payment for construction work is wholly independent of Clark Fray's obligation to repay the note and, accordingly, is not, in itself, "a scheme or arrangement likely to mislead banking authorities." Because the agreement does not constitute "a scheme or arrangement likely to mislead banking authorities," it need not meet the requirements of12 U.S.C. § 1823 (e). Bateman v. Federal Deposit Ins. Corp., supra, 1201.
Additionally, 12 U.S.C. § 1823 (e) is also inapplicable to the OCC's counterclaim because the agreement between OCC and Clark Fray has not, by itself, diminished or defeated an interest of the FDIC. Because 12 U.S.C. § 1823
(e) is inapplicable to the agreement between OCC and Clark 
Fray as a matter of law, it is found that the failure of OCC to allege the existence of a written agreement between Citytrust and OCC which tends to diminish the interest of the FDIC in mortgages obtained by the FDIC from Citytrust is a legally insufficient defense to OCC's counterclaim. CT Page 4058
CONCLUSION
For the reasons herein stated, it is the conclusion of the court that OCC's motion to strike the FDIC's reply to OCC' special defense because the motion is improper ought to be and is hereby denied and OCC's motion to strike the FDIC's special defense because the special defense is legally insufficient ought to be and is hereby granted.
It is so ordered.
ARENA, J.