SIDNEY VOGEL *v.* ESTHER VOGEL

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued April 4—decision released July 17, 1979

---

*Sidney Vogel,* pro se, the appellant (plaintiff).

*Robert K. Lesser,* with whom, on the brief, was *Stanton H. Lesser,* for the appellee (defendant).

COTTER, C. J.  This is an appeal by the plaintiff from an order of the Superior Court finding him in contempt.

In 1958, the plaintiff husband initiated an action against the defendant, his wife, in which he claimed: (1) a divorce on the ground of desertion, (2) a declaratory judgment determining the rights of the parties in and to the proceeds of the sale of certain real property,[1] and (3) "[s]uch other and further judgments and decrees as the Court shall deem necessary or proper."  Upon finding the plaintiff's allegation of the defendant's desertion, which allegedly occurred on September 13, 1955, to be true, the court, on February 9, 1959, rendered a decree of divorce in favor of the plaintiff.[2]  The court further

---

[1] In the second count of the plaintiff's complaint, he alleged: in 1947, the parties acquired certain real property situated in Norwalk and, although the plaintiff paid the entire consideration for that property, title was in the names of both parties; in 1950, he conveyed his interest in that property to the defendant without consideration; she conveyed the property back to the plaintiff, without consideration, in 1951; and, in 1955, the plaintiff conveyed the property to a third party for the sum of $24,000.

[2] The divorce decree rendered in 1959 was, of course, prior to the enactment of the present provisions prohibiting the granting of a decree of dissolution or legal separation in favor of either party. See General Statutes § 46b-51 (b).

concluded that a declaratory judgment ought to enter; whereupon, "as a declaratory judgment," the following relevant orders were made a part of the judgment: (1) the defendant will release and relinquish any and all rights or claims in any holdings, properties or assets of the plaintiff, past, present and future; (2) in consideration for such release, the plaintiff pay the defendant $12,000 cash; (3) the plaintiff will turn over to the defendant a policy of insurance on the defendant's life and relinquish all claims which the plaintiff may have in that policy; (4) commencing February 13, 1959, and for the balance of the joint lives of the parties, the plaintiff will pay to the defendant the weekly sum of $30; and (5) upon delinquency by the plaintiff with respect to such payments, the defendant shall have the right to apply to the court for enforcement "as for a contempt."

In October of 1977, the plaintiff filed a motion to reopen and modify the 1959 judgment so as to reduce the weekly payments of $30 required therein on the basis of his alleged unemployment and lack of income. Pursuant to that motion, the court ordered that "only $20.00 need be paid weekly and the remaining $10.00 per week shall stand in abeyance to accumulate until such time as the Plaintiff sells the whole or any part of his personalty or realty, at which time it shall be payable." Subsequently, in response to a motion filed by the defendant to have the plaintiff held in contempt "for his failure to make alimony payments in accordance with the order of this Court," the court, on March 20, 1978, found the plaintiff to be $600 in arrears but ordered that arrearage to be held in abeyance "until such time as the Plaintiff sells the whole or any part of his personalty or realty." On May 22, 1978, the

plaintiff filed a motion to terminate the weekly payments in question, but the record does not disclose that any action was taken by the court with respect to that motion.

Once again, in October, 1978, the defendant filed a motion for contempt alleging, inter alia, that the plaintiff had sold his part interest in certain real property located in Norwalk for the sum of $157,500, and that he had failed to comply with the weekly payment order of the 1959 judgment as subsequently modified. The court determined the plaintiff was in arrears in the amount of $1630; found him in contempt and ordered that he pay the arrearage in two payments of $815 on November 9 and 30, 1978. From the granting of the motion for contempt, the plaintiff has appealed to this court.

The plaintiff did not take an appeal from either the original judgment rendered in 1959 or from the order of the court modifying that judgment in 1978. Moreover, the plaintiff admits that, with the exception of one $20 payment, he has made no payments since October 14, 1977; although he apparently complied in all other respects with the 1959 judgment until that date.

Consequently, the sole ground upon which the plaintiff predicates his claim that the trial court erred in finding him in contempt is that the order for weekly payments contained in the 1959 judgment was void *ab initio* due to the court's lack of subject matter jurisdiction to enter such an order at that time. The plaintiff contends that, at the time judgment was rendered, the law in this state as interpreted in the 1876 case of *Allen* v. *Allen,* 43 Conn. 419, provided that the trial court was without authority to assign any of the husband's property to

a woman divorced for her own misconduct.[3] Since the plaintiff obtained a divorce on the ground of the defendant's wilful desertion, therefore, it is argued that the court had no power to order the weekly payments at issue in the present case.

The plaintiff's collateral attack upon the validity of the 1959 judgment is framed as a challenge to the subject matter jurisdiction of the court which, as we have consistently recognized, "can be raised at any time . . . and the lack thereof cannot be waived." *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990; *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 263, 348 A.2d 658; Maltbie, Conn. App. Proc. § 45. As we have only recently observed, however, "[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695–97; Restatement (Second), Judgments § 15 (Tent. Draft No. 5 1978)." *Monroe* v. *Monroe,* 177 Conn. 173, 178, 413 A.2d 819. Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the

---

[3] The holding in *Allen* v. *Allen,* 43 Conn. 419, was, in effect, superseded in 1973 by Public Act 1973, No. 73-373 §§ 20, 21, which provides that the causes for the marital breakup be only a factor for the court to consider in ordering an assignment of property or an award of alimony. See General Statutes §§ 46b-81 and 46b-82. The provisions of the present chapter 815j of the General Statutes did not affect the judgment of divorce in the present case. See General Statutes § 46b-69.

original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. James & Hazard, op. cit. 695; Restatement (Second), Judgments, supra.

The plaintiff in this case not only was fully aware of the consequences of the decrees and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges. After almost twenty years of compliance with those orders, we can find no "strong policy reasons" for entertaining the litigation of a resurrected claim of a jurisdictional defect.

Moreover, to give an expansive interpretation to the concept of "subject matter jurisdiction" would be to "undermine significantly the doctrine of res judicata, and to eliminate the certainty and finality in the law and in litigation which the doctrine is designed to protect." *Lacks* v. *Lacks,* 41 N.Y.2d 71, 77, 359 N.E.2d 384. "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Lesser irregularities do not make a final judgment void." *Monroe* v. *Monroe,* supra, 185.

At the time judgment was rendered in the present case, the statutes provided that "[t]he superior court shall have exclusive jurisdiction of all complaints for divorce . . ."; General Statutes § 7327 (Rev. 1949); and that "[t]he superior court may assign to any woman divorced by such court a part of the estate of her husband and . . . may order alimony to be paid from the husband's income . . . ." General Statutes § 7335 (Rev. 1949). The court,

therefore, had "competence to entertain the action before it"; *Monroe* v. *Monroe,* supra; which was, in fact, a complaint for divorce that was coupled with a request for a declaratory judgment and other relief.

The plaintiff's collateral attack upon the 1959 judgment, therefore, cannot be sustained.

There is no error.

In this opinion the other judges concurred.