14

## FRANCIS DALEY ET AL. *v.* CITY OF HARTFORD
### (13781)

PETERS, C. J., CALLAHAN, COVELLO, HULL and F. X. HENNESSY, Js.

Argued February 27—decision released May 8, 1990

*H. Maria Cone,* senior assistant corporation counsel, with whom, on the brief, was *Richard M. Cosgrove,* senior deputy corporation counsel, for the appellant (defendant).

*Joseph C. Morelli,* for the appellees (plaintiffs).

PETERS, C. J. The dispositive issue in this appeal is whether a court has subject matter jurisdiction to entertain a contract action arising out of a provision of a collective bargaining agreement that has not been grieved when the parties have exhausted applicable grievance procedures relating to a different provision of the agreement. The plaintiff police officers, having been bypassed for promotion to the rank of lieutenant in the police department of the defendant city of Hartford, brought a breach of contract action against the defendant alleging that the promotional process violated the collective bargaining agreement that had been negotiated between their union and the defendant.

The lengthy procedural background of this action began when the trial court, *O'Neill, J.,* directed a verdict in favor of the defendant and the plaintiffs appealed. The Appellate Court, in *Daley* v. *Gaitor,* 16 Conn. App. 379, 390, 547 A.2d 1375, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988), determined that the interpretation of the collective bargaining agreement

was a question of fact that should be resolved by a jury in a new trial. Upon remand to the trial court, the defendant unsuccessfully moved to dismiss the case for lack of subject matter jurisdiction, alleging, inter alia, that the plaintiffs, as individual union members, lacked standing to enforce the collective bargaining agreement and, alternatively, that they had failed to exhaust their contractual remedies.[1] The jury trial resulted in a verdict in favor of the plaintiffs. Denying the defendant's motions to set aside the verdict and for judgment notwithstanding the verdict, the trial court, *Thompson, J.*, rendered judgment for the plaintiffs. The defendant appealed to the Appellate Court and we transferred the appeal to ourselves pursuant to Practice Book § 4023. We find error.

The history of this case depicts a regrettably convoluted "nine year saga." For present purposes, it is necessary only to recite the factual background relating to the specific grievance filed on behalf of the plaintiffs by their union and the inferences from those grievance procedures that the trial court drew upon remand from the Appellate Court.[2]

The plaintiffs are present and former sergeants in the Hartford police department who applied for the position of lieutenant in 1981. Each had attained a score of at least seventy-six on the written examination, the minimum necessary to proceed to the oral examination. Subsequent evaluation of the written test results, however, revealed an adverse impact on minority candidates as measured by the federal Uniform Guidelines on Employee Selection, 29 C.F.R. § 1067 et seq. The

---

[1] The motion to dismiss was first denied by *Koletsky, J.*, because of the defendant's failure to present evidence to support its factual allegations regarding the exhaustion of remedies. Thereafter, the defendant renewed its jurisdictional claim at trial, with an evidentiary showing, but its motion was again denied by *Thompson, J.*

[2] Further background information is contained in *Daley* v. *Gaitor*, 16 Conn. App. 379, 547 A.2d 1375 (1988).

defendant, in accordance with 29 C.F.R. § 1067.66 (2), which provides for modification of employee selection procedures in order to alleviate any discriminatory impact, voluntarily altered its previously established eligibility criteria and permitted any sergeant who had taken the written examination to proceed to the oral evaluation. Thereafter, those individuals who had completed both phases of this bifurcated promotional process were ranked. *Daley* v. *Gaitor,* supra, 381. As a result, three individuals who, in accordance with the originally established promotional guidelines, would not have proceeded to the oral examination, were ultimately promoted to lieutenant in lieu of the plaintiffs. Id., 382.

Because of the provisions of General Statutes §§ 7-467 through 7-477, the collective bargaining agreement between the International Brotherhood of Police Officers, Local 308 (union) and the defendant governed the plaintiffs' employment relationship with the defendant. Section 3.3 of the collective bargaining agreement incorporated the defendant's personnel rules and regulations. Article II of the agreement provided a four step procedure for the resolution of employment grievances and disputes. The agreement authorized any individual employee to pursue a claim through the first three steps of the grievance procedure, but reserved to the union the discretion to determine whether a grievance would be pursued to the fourth step, the state board of mediation and arbitration.[3] Pursuant to the fourth step, § 2.1, the state board of mediation and arbitration "shall be limited to the express terms of the contract and shall not have the power to modify, amend or delete any terms or provisions of the Agreement," and its decision "shall be final and binding on the parties."

---

[3] The collective bargaining agreement expressly provided that Article II did not prohibit the defendant from processing a grievance through the entire grievance procedure up to and including arbitration.

Although the promotional process that the plaintiffs challenge occurred in 1981, it was not until 1983 that the plaintiffs, with the support of their union, filed a grievance with the defendant. In their grievance, the plaintiffs specifically alleged violations of the "no discrimination" and "prior benefits and practices" sections of the contract, §§ 1.7 and 3.4 respectively.[4] Because the collective bargaining agreement expressly required any grievance to be filed within seven days from the date of the alleged violation, the defendant consistently denied the grievance at steps one, two and three of the grievance procedure, on the ground that the grievance was untimely and therefore nonarbitrable. In addition, the defendant maintained, at each juncture, that "the [s]ubject of the grievance [was] specifically excluded from [the] collective bargaining [agreement] and therefore the grievance procedure . . . ."[5]

In accordance with the terms of the collective bargaining agreement, the union filed a fourth step griev-

[4] Section 1.7 of the collective bargaining agreement provides: "No Discrimination. The provisions of this Agreement shall be applied equally to all employees in the bargaining unit without discrimination because of age, sex, marital status, race, color, religion, creed, national origin, political affiliation or union membership."

Section 3.4 of the collective bargaining agreement provides: "Prior Benefits and Practices. Any job benefits or work practices existing prior to the date of this Agreement, which were the subject of any written memoranda or directives issued by the Chief or his Superiors and which are not specifically provided for or abridged in this Agreement, are hereby protected by this contract. This provision shall not preclude the right of the City Manager to make reasonable changes in such work practices and job benefits, provided that no such change shall be made for the purpose of undermining the Union."

[5] In its denial of the third step grievance, the defendant, for the first time, introduced a third ground for nonarbitrability that neither party has raised as an issue in this appeal. With respect to the subject matter of the grievance, the defendant further contended that "[t]he matter being grieved, the establishment of a passing score on a written examination for Lieutenant, falls under Section 1.5 Management Rights and as such, is not subject to the grievance procedure."

ance with the state board of mediation and arbitration. On May 9, 1984, the state board of mediation and arbitration, acting upon the terms of the parties' stipulation to that effect, issued an award that the grievance was nonarbitrable. The parties' stipulation provided specifically that (1) "[t]he City has raised the issue of arbitrability with regard to Case #8384-A-274 currently before the Connecticut State Board of Mediation and Arbitration"; (2) "[t]he Union hereby concedes without prejudice or precedent that the issue in Case #8384-A-274 is not arbitrable"; and (3) "[t]he parties agree and jointly request that items 1 and 2 above be issued as a stipulated award by the Connecticut State Board of Mediation and Arbitration for Case #8384-A-274."

Because this stipulation of the nonarbitrability of the union's grievance forms the fulcrum upon which the threshold question of subject matter jurisdiction rests, it is significant to note what it left unstated. The stipulation does not reveal the underlying basis for the parties' agreement that the grievance was nonarbitrable. The parties now disagree about the significance of that omission. There can be no dispute, however, about the fact that § 3.3, the provision delineating applicable personnel rules and regulations, was *not* one of the specific terms of the collective bargaining agreement submitted by the parties for arbitration. Moreover, the union has never grieved a violation of § 3.3 of the collective bargaining agreement on behalf of the present plaintiffs.

The plaintiffs' first trial proceeded on a theory of breach of contract, not specifically relying upon § 3.3 as a basis for the defendant's liability, which was rejected by the Appellate Court.[6] Indeed, the collec-

---

[6] Although the plaintiffs' complaint generally referenced the personnel rules and regulations incorporated into the collective bargaining agreement at § 3.3, and specifically referred to Rule VI, § 3, which provided in perti-

tive bargaining agreement was never introduced into evidence at the first trial. The Appellate Court, nonetheless, held that whether the collective bargaining agreement mandated the use of a particular promotional process presented a question of fact for the jury to determine, and thereupon remanded the case for a new trial. *Daley* v. *Gaitor,* supra, 388–90. When, in accordance with this remand, the plaintiffs' contract action at the retrial went forward on the theory that the defendant's denial of the promotions sought by the plaintiffs constituted a violation of § 3.3, the defendant moved to dismiss the action for lack of subject matter jurisdiction because of the plaintiffs' failure specifically to grieve § 3.3 of the collective bargaining agreement.

The trial court denied the defendant's motion to dismiss for lack of subject matter jurisdiction. The court held that "the substance of the plaintiffs' claim has been consistent from the outset and the City certainly was aware of the nature of the claim being asserted. Therefore, it is reasonable to conclude that the [defendant's] position was that the substance of the plaintiffs' claims, as opposed to the section of the contract upon which

nent part that "[c]andidates shall be required to attain at least a minimum rating on each part of the test in order to receive a passing grade or be rated on the remaining parts of the test," the complaint, as originally articulated, did not focus on any specific allegations of the defendant having violated the personnel rules and regulations. Rather, the gravamen of the first trial was the defendant's alleged breach of its "contractual promise to allow only those who had achieved a minimum passing score of 76 to advance to the second (oral) examination, by allowing all persons who took the written exam to proceed to the oral examination." The Appellate Court dismissed this claim because "even if the [promotional] pronouncement had represented that the number of people who could take the oral examination would be limited, such representations would not have been sufficiently definite or promissory to support contractual liability. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 214–15, 520 A.2d 217 (1987)." *Daley* v. *Gaitor,* 16 Conn. App. 379, 385 n.6, 547 A.2d 1375 (1988).

they relied, was not subject to arbitration." The court went on to find that because the plaintiffs' attempts to exhaust the exclusive grievance and arbitration procedures established by the collective bargaining agreement before resorting to the courts "were met with a claim by the [defendant] that [the plaintiffs' grievance] was not one which was subject to the arbitration procedures[, it] would appear that at the very least, the [defendant was] estopped from making a claim to the contrary in an effort to deny the plaintiffs' standing to bring [a] lawsuit." The court thereafter allowed the plaintiffs to present their case to a jury and rendered judgment in accordance with a jury verdict in their behalf.

The defendant has renewed its jurisdictional claim in the present appeal.[7] Relying on the proposition that the parties' submission defines and limits the scope of arbitration by specifically delineating the issues to be decided; *North Haven Assn. of Educational Support Staff* v. *Board of Education,* 209 Conn. 280, 283, 550

---

[7] The defendant has also renewed on appeal its jurisdictional claim that the plaintiffs lacked standing, as bargaining unit members, to enforce a collective bargaining agreement between the defendant and their union. The trial court, in rejecting this claim, opined that because "the union would be in a situation of conflict of interest in doing so since a successful result in the case at hand necessarily includes taking action which might be prejudicial to the interests of minority officers who are also members of the union . . . it would appear only equitable that such employee [whose interests differed from that of the union as a whole] should have standing to enforce his or her rights under a collective bargaining agreement, particularly where the agreement itself does not preclude such action." The defendant now argues that, in order for the plaintiffs successfully to initiate a breach of contract claim against their employer and to overcome a defense of failure to exhaust their contractual remedies, they must prove that the union breached its duty of fair representation in its handling of the employee grievance. The failure to allege the breach of the duty of fair representation by the union, the defendant asserts, is fatal to the plaintiffs' complaint. Moreover, the defendant argues that, in view of the exclusive nature of the grievance procedure articulated in the collective bargaining agreement and the

A.2d 1077 (1988); *Board of Education* v. *AFSCME,* 195 Conn. 266, 271, 487 A.2d 553 (1985); the defendant maintains that the court committed error by enlarging the submissions stipulated as having been nonarbitrable to include § 3.3, when that provision of the collective bargaining agreement had not previously been grieved. Moreover, the defendant contends that, because, "as a matter of state law, parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court"; *School Administrators Assn.* v. *Dow,* 200 Conn. 376, 382, 511 A.2d 1012 (1986); the plaintiffs' failure to grieve § 3.3 of the collective bargaining agreement deprived the trial court of subject matter jurisdiction to hear the case on the breach of contract theory that the plaintiffs advanced at retrial.

The plaintiffs concede both their failure specifically to grieve § 3.3 of the collective bargaining agreement and their reliance on this provision in the retrial of their breach of contract claim. They nonetheless contend that the nonarbitrability stipulation should necessarily excuse any technical failure to exhaust their contrac-

express reservation to the union alone of the right of access to the final step of the grievance process, the state board of mediation and arbitration, the trial court erred in finding that the agreement does not preclude the plaintiffs as employees from initiating an action against their employer. Given our conclusion that the plaintiffs' failure specifically to grieve § 3.3 deprives the court of subject matter jurisdiction, it is unnecessary to address this alternate jurisdictional claim of error. We note only that the union's pursuit of this same claim, brought pursuant to the "no discrimination" and "prior benefits and practices" sections of the contract, throughout the entire four step grievance process, weakens the trial court's finding that the union could not adequately protect the plaintiffs' interests because of the potential conflict of interest among its members that might result should the plaintiffs be successful.

On appeal, the defendant has also raised an insufficiency of the evidence claim. Given our disposition of the threshold question of subject matter jurisdiction, however, it is unnecessary to review this alternate claim of error.

tual remedies because, by the defendant's own admission, the underlying subject matter jurisdiction of the grievance was nonarbitrable.[8] The plaintiffs, therefore, assert that the defendant, having agreed to the stipulation of the nonarbitrability of the grievances they did file, must be barred either as a matter of law or on the ground of estoppel from belatedly raising jurisdictional obstacles to this action. We are unpersuaded by the plaintiffs' contention.

It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. *Vaca* v. *Sipes,* 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Republic Steel Corporation* v. *Maddox,* 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965); *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 500, 522 A.2d 264 (1987); *School Administrators Assn.* v. *Dow,* supra, 381–82. The threshold question before us is whether, in this case, the defendant's stipulation of nonarbitrability may be construed as sufficiently expansive to excuse the plaintiffs' failure to exhaust their contractual remedies with respect to § 3.3 of the collective bargaining agreement. Well established principles governing the arbitration of labor disputes, however, counsel against such an expansive interpretation.

In the same way that the provisions of the collective bargaining agreement strictly limit the authority to arbitrate; *North Haven Assn. of Educational Support Staff* v. *Board of Education,* supra, 283; *Board of Education* v. *AFSCME,* supra, 271; *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 621, 370 A.2d 1076 (1976); so the agreement between the parties necessarily limits the scope of judicial review. *Hartford* v.

---

[8] The plaintiffs alternatively contend that General Statutes § 7-474 (g) precluded their submission of § 3.3 for arbitration, and thus their failure

*Local 308,* 171 Conn. 420, 424, 370 A.2d 996 (1976); *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 318, 355 A.2d 279 (1974); see also *Combustion Engineering, Inc.* v. *International Brotherhood of Boilermakers,* 15 Conn. App. 332, 333, 544 A.2d 256 (1988). Just as, according to the general rule, " '[a] challenge of the arbitrator's authority is limited to a comparison of the award to the submission'[;] *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981)"; *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 338, 555 A.2d 406 (1989); so too is the court's authority in reviewing an arbitration award confined to the issues submitted. The arbitrator may not exceed his or her authority by making an award beyond the scope of the parties' submission; *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 186, 530 A.2d 171 (1987); *Board of Education* v. *AFSCME,* supra; *Waterbury Construction Co.* v. *Board of Education,* 189 Conn. 560, 563, 457 A.2d 310 (1983); nor may the court fail to conform its rulings to the scope of the parties' submission. "The submission, then, defines the scope of the entire arbitration proceeding by specifically delineating the issue to be decided. *Naugatuck* v. *AFSCME,* 190 Conn. 323, 326, 460 A.2d 1285 (1983)." *Board of Education* v. *AFSCME,* supra, 271; *North Haven Assn. of Educational Support Staff* v. *Board of Education,* supra, 283.

---

specifically to grieve that section of the collective bargaining agreement is not jurisdictionally fatal. In promoting this contention, the plaintiffs would have us limit ourselves to that provision of § 7-474 (g), which states that "[t]he conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from such examinations and the initial appointments from such lists . . . shall not be subject to collective bargaining . . . ." We cannot overlook, however, the additional statutory directive provided by § 7-474 (g) that "once the procedures for the promotional process have been established by the municipality, *any changes to the process* proposed by the municipality *concerning [the necessary qualifications* for taking a promotional examination] *shall be subject to collective bargaining.* (Emphasis added.) The gravamen of the plaintiffs' complaint concerns the fairness of the defendant's subsequent changes to the established qualifications necessary to proceed with the promotional process. We conclude, therefore, that this contention is without merit.

Accordingly, to ascertain whether the court erred in denying the defendant's motion to dismiss, it is the specific *submission* that resulted in the arbitrator's award of the stipulation of nonarbitrability that must control our disposition of the jurisdictional claim of error. In their grievance alleging that the defendant's promotional process constituted a breach of their union's collective bargaining agreement with the defendant, the plaintiffs expressly limited their submission to violations of §§ 1.7 and 3.4. The issues to be decided by arbitration, therefore, as specifically delineated by that submission, were whether the defendant's promotional process violated the "no discrimination" and "prior benefits and practices" sections of the collective bargaining agreement.[9] Having exercised their discretion not to grieve a § 3.3 claim, the plaintiffs are bound by their decision in that regard. A submission of two sections of a collective bargaining agreement for arbitration does not automatically encompass other sections not previously grieved.

The plaintiffs suggest, however, that, whatever the scope of the arbitration might originally have been, the effect of the stipulated agreement of nonarbitrability was to relieve them of any further obligation to exhaust contractual remedies concerning provisions of the collective bargaining agreement, such as § 3.3, that are inferentially related to those that had been grieved. In pressing this contention, the plaintiffs maintain that we should focus on the omission in the stipulation of the grounds upon which the parties agreed that the grievance was nonarbitrable, rather than upon the submission itself. The plaintiffs assert that the gravamen of their grievances was their complaint about the fairness of the defendant's promotional process, rather than the applicability of particular provisions of the collective bargaining agreement. In the light of this shared understanding about what was at issue, and the fact

---

[9] The record reflects no reason why the plaintiffs might not have additionally submitted § 3.3 for arbitration.

that the present trial concerned the merits of this same underlying issue, the plaintiffs argue that any ambiguity in the stipulation of nonarbitrability should be resolved in favor of an expansive interpretation rendering the plaintiffs compliant with the exhaustion requirement.

This argument might have some merit were it not for the fact, emphasized by the defendant, that the untimely filing of the plaintiffs' grievance presented the primary procedural impediment to the arbitrability of the grievance. The plaintiffs do not contend that the filing of an untimely grievance serves as compliance with the exhaustion requirement. The present record compels the conclusion that the stipulation of nonarbitrability arose out of the plaintiffs' own delay in pursuing their grievance rather than out of an agreement about the merits of their underlying controversy with the defendant. The trial court therefore improperly relied upon the nonarbitrability stipulation as a basis for enlarging the terms of the submission and as an excuse for the plaintiffs' failure to exhaust their contractual remedies with respect to § 3.3.

Our conclusion that the plaintiffs' failure specifically to grieve § 3.3 would ordinarily deprive the trial court of subject matter jurisdiction does not, however, end their appeal. The plaintiffs maintain, in the alternative, that application of the principles of finality and law of the case requires us to hold that, in this case, the defendant has become estopped to avail itself of this jurisdictional claim of error. Although the plaintiffs concede that subject matter jurisdiction may be raised at any time and the lack thereof can neither be waived; *Meinket* v. *Levinson,* 193 Conn. 110, 114, 474 A.2d 454 (1984); *Vogel* v. *Vogel,* 178 Conn. 358, 362, 422 A.2d 271 (1979); nor conferred by consent; *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985); they assert that the defendant's jurisdictional claim must fall to "[t]he modern rule on conclusiveness of

determinations of subject matter jurisdiction [that] gives finality substantially greater weight than validity . . . ." 1 Restatement (Second), Judgments § 12, comment a.

The plaintiffs assert that because the defendant failed to utilize its full opportunity to litigate its jurisdictional claim prior to the Appellate Court's remand for a new trial, its challenge to the exercise of the court's jurisdiction upon remand functionally amounts to a collateral attack upon the Appellate Court's judgment. Since this court "strongly disfavor[s] collateral attacks upon judgments because such belated litigation undermines the important principle of finality"; *Meinket* v. *Levinson,* supra, 113; *Vogel* v. *Vogel,* supra; see also *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance,* 208 Conn. 187, 200, 544 A.2d 604 (1988); the plaintiffs contend that the defendant has forfeited its right to mount a jurisdictional challenge to the plaintiffs' cause of action. The plaintiffs further maintain that, given the defendant's failure to pursue a jurisdictional defense in the original action, or before the Appellate Court, no strong public policy reasons operate to afford the defendant a second opportunity to do so. Moreover, because the mandate of the Appellate Court significantly determined the course to be pursued in the trial court on remand; *Hartford National Bank & Trust Co.* v. *Tucker,* 195 Conn. 218, 220, 487 A.2d 528, cert. denied, 474 U.S. 845, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985); the plaintiffs urge us to hold that the defendant is bound by the law of the case and is therefore estopped from asserting a jurisdictional defense at this late juncture. We disagree that the principles that govern either finality or the law of the case foreclose the defendant's jurisdictional claim in the circumstances presently before us.

This court has often stated that the question of subject matter jurisdiction, because it addresses the basic

competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. See *Kinney* v. *State,* 213 Conn. 54, 58, 566 A.2d 670 (1989); *Castro* v. *Viera,* 207 Conn. 420, 427–30, 541 A.2d 1216 (1988); *Sasso* v. *Aleshin,* 197 Conn. 87, 89, 495 A.2d 1066 (1985); *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985). In certain circumstances, we have, however, recognized that this principle of validity must be tempered by the countervailing force of the principle of finality. "The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." *Monroe* v. *Monroe,* 177 Conn. 173, 178, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); *Meinket* v. *Levinson,* supra, 114; *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 560, 468 A.2d 1230 (1983); *Vogel* v. *Vogel,* supra, 362–63; 1 Restatement (Second), Judgments § 12; F. James & G. Hazard, Civil Procedure (2d Ed. 1977) § 13.16. "[T]he principle of finality rests on the premise that the proceeding had the sanction of law, expressed in the rules of subject matter jurisdiction. As long as the possibility exists of making error in a determination of the question of subject matter jurisdiction, the principles of finality and validity cannot be perfectly accommodated. . . . If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised. The essential problem is therefore one of selecting which of the two principles is to be given the greater emphasis." 1 Restatement (Second), Judgments § 12, comment a.

The plaintiffs urge us, in this case, to give conclusive weight to the principle of finality. Emphasizing that the defendant failed to pursue a jurisdictional claim in the Appellate Court prior to the remand for retrial, the plaintiffs maintain that a finding of jurisdictional competence must be implied in the Appellate Court's direction of a new trial. If that direction does not itself constitute a final judgment, they contend that the doctrine of law of the case similarly forecloses the defendant's jurisdictional claim at this late date. We are unpersuaded.

We decline to view an order remanding a case for a new trial as a final judgment for the purposes of the principle of finality. See *State* v. *Malkowski,* 189 Conn. 101, 105, 454 A.2d 275 (1983); cf. *Armac Industries, Ltd.* v. *Citytrust,* 203 Conn. 394, 401–403, 405, 525 A.2d 77 (1987). We are equally unpersuaded that the law of the case stands as an obstacle to inquiry into judicial competence to act. "The law of the case . . . is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478. In essence it expresses the practice of judges generally to refuse to reopen *what has been decided* and is not a limitation on their power." (Emphasis added.) *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982); *Rosenblit* v. *Danaher,* 206 Conn. 125, 132, 537 A.2d 145 (1988). The present record does not demonstrate that the Appellate Court in fact or in law decided the issue of subject matter jurisdiction. Although the defendant had unsuccessfully moved several times, prior to the Appellate Court's decision in *Daley* v. *Gaitor,* supra, 390, to dismiss the companion case of *Daley* v. *Gaitor,*[10] for lack

[10] In *Daley* v. *Gaitor,* which had been consolidated with their breach of contract action at the first trial, the plaintiffs additionally had sought an injunction to restrain city officials from administering the oral examination to any police officer who had not scored in the top 50 percent of those

of subject matter jurisdiction, the defendant did not raise subject matter jurisdiction in the appellate tribunal. The failure to raise the issue at that time, while regrettable, may be explained by the nature of the plaintiffs' appeal and by the absence of any emphasis, by either party, on the legal significance of § 3.3 prior to the decision of the Appellate Court. Accordingly, the defendant brought the matter of subject matter jurisdiction to judicial attention in a timely manner once the issue came on the table because of the agenda set for the retrial by the Appellate Court. Undeniably, both parties upon remand had an adequate opportunity to litigate the claim of subject matter jurisdiction. In our view, this appeal, therefore, represents the first opportunity for an appellate court to rule directly upon the question of subject matter jurisdiction.[11]

Finally, we note the public policy interest in the settlement of employment relationship disputes through contract grievance-arbitration procedures, as expressed in the legislature's enactment of the state Labor Management Relations Act, General Statutes §§ 31-101 through 31-111b, the Municipal Employee Relations Act, General Statutes § 7-467 et seq., and the arbitration statutes, General Statutes §§ 52-408 through 52-424. See *Republic Steel Corporation* v. *Maddox,*

---

who had taken the written examination. The Appellate Court, however, in *Daley* v. *Gaitor,* 16 Conn. App. 379, 380–81 n.2, 547 A.2d 1375 (1988), dismissed as moot the plaintiffs' appeal from the court's denial of the injunction.

[11] Even were we to determine, however, that the defendant's jurisdictional claim was untimely as it had not been explored prior to remand, our resolution of this question would have been no different. Under the restatement guidelines, "[a] subsequent challenge to subject matter jursidiction, when that issue was not actually litigated in the prior action, is authorized only if the litigant can show that 'the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers . . . .' 1 Restatement (Second), Judgments § 12, comment d; 2 Restatement (Second), Judgments § 69; *Vogel* v. *Vogel,* [178 Conn. 358, 362–63, 422 A.2d 271 (1979)]." *Meinket* v. *Levinson,* 193 Conn. 110, 114–15, 474 A.2d 454 (1984).

supra, 652; *School Administrators Assn.* v. *Dow,* supra, 381. This interest counsels us to resolve any doubts about the applicability of the law of the case in favor of permitting adjudication of a subject matter jurisdiction claim in this case. See *Vaca* v. *Sipes,* supra, 184; 1 Restatement (Second), Judgments § 12, comment d.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other justices concurred.