[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 6, 1995, the plaintiffs, Merrill Lynch Co., Inc. (Merrill Lynch) and William Dean, a former employee of Merrill Lynch, filed the present application for temporary injunctive relief and order to show cause. The plaintiffs also filed a verified three-count complaint seeking to permanently enjoin the defendant from arbitrating his claims against them. Named as defendant is Carleton Mathes, as executor of the estate of Mary Ann Shook (decedent). Merrill Lynch is a Delaware corporation that is licensed to do business in Connecticut. Both Dean and the defendant reside in Connecticut. The decedent had opened and maintained her personal account at the Southbury office of Merrill Lynch, Pierce, Fenner Smith, Inc., (MLPFS) a subsidiary of Merrill Lynch.
In making the present application, the plaintiffs seek to temporarily and permanently enjoin an arbitration commenced by the defendant against the plaintiffs before the New York Stock Exchange, Inc. (NYSE), captioned Carleton K. Mathes, as Executorof the Estate of Mary Ann Shook v. Merrill Lynch Co., Inc. andWilliam A. Dean, NYSE No. 1992-002349. The arbitration proceeding involves allegations of securities fraud, breach of fiduciary duty and breach of contract arising out of the sale of various limited partnerships to the decedent. The defendant commenced the NYSE arbitration as executor and on behalf of the estate of Mary Ann Shook, who at all relevant times, maintained CT Page 10851 an investment account with Merrill Lynch.
On September 22, 1982, the decedent executed a customer agreement and established an account with MLPFS. On various dates between August 11, 1983 and November 9, 1989, the decedent purchased from Merrill Lynch, acting through its agent, William Dean, twelve limited partnerships at an aggregate purchase price of $344,132.00. The decedent died on October 5, 1991, and the defendant was subsequently appointed executor of her estate.
In paragraph 11 of the customer agreement (annexed as exhibit 1 to the complaint), the parties agreed to arbitrate any controversy arising out of the agreement either pursuant to the NYSE constitution and rules, or pursuant to the National Association of Securities Dealers, Inc. Code of Arbitration Procedure (NASD Code).[1] In paragraph 12, the parties agreed that the customer agreement, including the arbitration provisions, was to be governed by the laws of the State of New York.[2]
By a statement of claim and uniform submission agreement filed on June 18, 1992, the defendant in the present case commenced an arbitration proceeding before the NYSE. The statement of claim (attached as exhibit 2 to the complaint) alleged claims of fraud, fraudulent concealment, breach of contract, breach of fiduciary duty, and violations of the federal Securities Exchange Act of 1934 arising out of the decedent's purchase of the twelve limited partnerships. The essence of the defendant's claims was that the plaintiffs allowed the decedent to buy limited partnerships which were not suitable investments for her.
By an order to show cause entered on July 10, 1992, the plaintiffs petitioned the Supreme Court of the State of New York for an order temporarily and permanently staying the arbitration on the grounds that the defendant's claims were ineligible for arbitration pursuant to NYSE Rule 603, and that the defendant's demand for punitive damages was barred by New York law.[3] On August 12, 1993, the New York court permanently stayed arbitration of all claims based on investments that were purchased more than six years prior to the commencement of arbitration. The New York court also permanently stayed arbitration of the defendant's demand for punitive damages. (A copy of the New York court's decision is attached as exhibit 3 to the complaint.) The defendant then appealed the lower CT Page 10852 court's decision to the Appellate Division of the Supreme Court which, on February 23, 1995, reversed the lower court on the ground that the New York courts lacked personal jurisdiction over the defendant.
After the Appellate Division ruled, the defendant wrote to the NYSE, informing them that the stay had been lifted, and requested an "expedited" proceeding. The NYSE scheduled hearings for July 11-14, 1995. The NYSE also ordered the plaintiffs to respond to the defendant's statement of claim by April 19, 1995. In response, the plaintiffs filed the present application for temporary and permanent injunctive relief.
On or about April 6, 1995, the plaintiffs filed a memorandum in support of their motion for a temporary injunction. On or about April 6, 1995, the defendant filed a memorandum in opposition to the plaintiffs' motion for a temporary injunction and in support of his motion to dismiss the verified complaint for a permanent injunction. On or about April 6, 1995, the defendant filed a motion to dismiss the plaintiffs' verified complaint. On May 11, 1995, the plaintiffs filed a memorandum in opposition to the defendant's motion to dismiss and in further support of their application for a temporary injunction.
A. Defendant's Motion to Dismiss Plaintiffs' Verified Complaint.
The defendant moves to dismiss the plaintiffs' action on the ground of lack of subject matter jurisdiction pursuant to Practice Book § 143(1). In support of his motion, the defendant argues that the plaintiffs are attempting to enjoin an arbitration proceeding that is to be held in New York before the NYSE. The defendant argues that the plaintiffs, in seeking injunctive relief, are in actuality, asking this court to stay the arbitration proceeding. The defendant argues that a Connecticut court does not have the power to stay a proceeding that is "venued" in another state.
In response, the plaintiffs contend that they are not requesting that this court stay the arbitration, but are asking the court to enjoin the defendant from arbitrating claims that are not arbitrable due to either substantive eligibility rules, the running of the statutes of limitations, or the operation of New York substantive law. The plaintiffs further argue that because their action against the defendant was dismissed by the CT Page 10853 New York court for lack of personal jurisdiction, the plaintiffs must bring their action in Connecticut. Thus, the plaintiffs contend that if this court dismisses their action, they will be left without a forum within which to challenge the arbitrability of the defendant's claims.
A motion to dismiss properly contests the trial court's jurisdiction, "asserting that the plaintiff cannot, as a matter of law and fact, state a cause of action that should be heard by the court." Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). Subject matter jurisdiction under Practice Book § 143(1) refers to the court's power to hear and determine cases of the general class to which the proceedings in question belong. Castro v. Viera, 207 Conn. 420, 427, 541 A.2d 1216
(1988). "Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." State v. Malkowski, 189 Conn. 101,105, 454 A.2d 275 (1983). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged."Killingly v. Connecticut Siting Council, 220 Conn. 516, 522,600 A.2d 752 (1991). The ground of lack of subject matter jurisdiction may be raised at any time. Daley v. Hartford,215 Conn. 14, 28, 574 A.2d 194 (1990). Once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court. Gurliacci v. Mayer, supra, 218 Conn. 545.
A close review of counsels' arguments in light of the foregoing, leads the court to the conclusion that it is not being asked to stay an arbitration thats venued in another state, rather, its being asked to enjoin parties over whom it has personal jurisdiction from engaging in acts which may cause irreparable harm to other parties. Certainly, the court has subject matter jurisdiction in this instance and, accordingly, denies defendant's motion to dismiss.
B. Plaintiffs' Application for a Temporary Injunction.
In order to obtain a temporary injunction, the plaintiffs must establish: (1) that they have no adequate remedy at law; (2) that they will suffer irreparable harm if the application for injunctive relief is denied; and (3) that they are likely to succeed on the merits. Connecticut Association of ClinicalLaboratories v. Connecticut Blue Cross, 31 Conn. Sup. 110,113-14, 324 A.2d 288 (Super.Ct. 1973). See also Griffin HospitalCT Page 10854v. Commission on Hospitals Health Care, 196 Conn. 451, 457-58,493 A.2d 229 (1989). However, even if these facts are proved, the court may deny the application if it finds that potential harm to the defendant from the granting of an injunction outweighs any harm the plaintiff may suffer if an injunction does not issue. Horton v. Meskill, 195 Conn. 234, 247 (1985). Parties have the right to seek injunctive relief to prevent the arbitration of nonarbitrable matters. Dean Witter Reynolds,Inc. v. McCoy, 995 F.2d 649 (6th Cir. 1993).
In seeking injunctive relief, the plaintiffs argue that the defendant's claims are not arbitrable because they are based on investments which were made more than six years prior to the commencement of arbitration, and therefore, are ineligible for arbitration pursuant to NYSE Rule 603. They contend that Rule 603 is a substantive eligibility requirement which must be enforced by the court.
NYSE Rule 603 provides that "[n]o dispute, claim or controversy shall be eligible for submission to arbitration where more than six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction."
NYSE Rule 603 is a substantive eligibility requirement defining the subject matter jurisdiction of the arbitrators to hear the dispute, and therefore, raises the question of arbitrability. See Cigna Financial Advisors, Inc. v. Rosen, Superior Court, judicial district of Hartford/New Britain, Docket No. 705235 (January 9, 1995, Sheldon, J.) (interpreting language of NASD Code § 15, which is similar to NYSE Rule 603.);Levin v. Advest, Superior Court, judicial district of Hartford/New Britain, Docket No. 529887 (July 15, 1994, Corradino, J.) (interpreting NYSE Rule 603). See also Roney Co. v. Kassab, 981 F.2d 894, 899 (6th Cir. 1992); PaineWebber,Inc. v. Farnam, 870 F.2d 1286, 1292 (7th Cir. 1989); MerrillLynch, Pierce, Fenner Smith v. DeChaine, 600 N.Y.S.2d 459, 460
(App.Div. 1993).[4] Because it is a jurisdictional eligibility rule, Rule 603 cannot be tolled by fraud, estoppel or otherwise.Roney Co. v. Kassab, supra, 981 F.2d 900; PaineWebber, Inc. v.Hartmann, 921 F.2d 507, 513 (3d. Cir. 1990). As such, it must be decided by the court as a threshold matter, prior to the arbitration. ATT Technologies, Inc. v. Communications WorkersCT Page 10855of America, 574 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648
(1986); PaineWebber, Inc. v. Hofmann, 984 F.2d 1372, 1379 (3d Cir. 1993); Merrill Lynch, Pierce, Fenner Smith, Inc. v.DeChaine, supra, 600 N.Y.S.2d 460.
The date of the occurrence or event for purposes of determining substantive eligibility under NYSE Rule 603 is the purchase date of the relevant investment. See Mutual ServiceCorporation v. Spaulding, 871 F. Sup. 324, 328 (N.D.Ill. 1994); Dean Witter Reynolds, Inc. v. McCoy, 853 F. Sup. 1023,1030-31 (E.D.Tenn. 1994); Prudential Bache Sec. v. Archard,579 N.Y.S.2d 890, 891 (App.Div. 1992).
In the present case, the plaintiffs contend that the arbitration was commenced by the defendant on June 18, 1992. The plaintiffs contend that the decedent purchased limited partnerships on the following dates: (a) August 11, 1983 (JMB Properties L.P.); (b) April 17, 1984 (MLH Realty L.P.); (c) June 3, 1985 (MRI Properties L.P.); (d) September 18, 1985 (Oxford L.P.); (e) May 1, 1986 (MRI Fund III L.P.); (f) June 18, 1986 (SCA Tax Exempt L.P.); (g) October 8, 1986 (ML Delphi L.P.); (h) November 19, 1986 (Oxford L.P.); (i) August 13, 1987 (ML-Lee L.P.); (j) October 6, 1987 (Arvida L.P.); (k) July 18, 1988 (Equitable Capital L.P.); and (1) November 9, 1989 (ML-Lee L.P.). The court notes that the dates alleged by the plaintiffs constitute "trade dates," or the dates when the decedent placed her orders with the plaintiffs, as opposed to the "settlement dates," which took place subsequent to the listed trade dates. Nevertheless, using June 18, 1992 as the date upon which arbitration was commenced, it is clear that all claims with respect to the following limited partnerships, which were purchased more than six years prior to June 18, 1992, are ineligible for arbitration pursuant to NYSE Rule 603: (1) JMB Properties L.P., purchased August 11, 1983; (2) MLH Realty L.P., purchased April 17, 1984; (3) MRI Properties L.P., purchased June 3, 1985; (4) Oxford L.P., purchased September 18, 1985; and (5) MRI Fund III L.P., purchased May 1, 1986. Accordingly, based on the substantive eligibility requirement of NYSE Rule 603, the arbitrators lack subject matter jurisdiction to hear any of the defendant's claims with respect to these limited partnerships.
The plaintiffs' second argument in support of their application is that the defendant's claims are barred by the applicable statute of limitations. The plaintiffs argue that CT Page 10856 the court may decide this issue because New York law, which governs the enforcement of the arbitration agreement, allows for a pre-arbitration judicial determination of statutes of limitations defenses. The plaintiffs contend that defendant's claims based on all but one of the limited partnership investments are barred by the three year limitations period for tort and oral contract under Connecticut law and the limitation period governing defendant's federal securities fraud claims. The plaintiffs also contend that the applicable statutes of limitations run from the date that each limited partnership was purchased, and that the defendant's decedent was put on notice of the risks inherent in these investments by virtue of the prospectuses, monthly statements and other literature that was distributed by the plaintiffs to the decedent.
In response, the defendant contends that the applicable statutes of limitation should be tolled in the present case because the plaintiffs engaged in a continuing breach of fiduciary duty and fraudulent concealment by virtue of their failure to properly and accurately advise the defendant (and the decedent) that the limited partnerships had declined in value.
"[U]nder New York law, statutory time limitations questions . . . as opposed to contractual time limitations agreed upon by the parties — are for the courts, not the arbitrators. . . ." (Citations omitted; emphasis in original.) Smith Barney, Etc.v. Luckie, 623 N.Y.S.2d 800, 805 (Ct.App. 1995). "When making a threshold Statute of Limitations determination under New York law, the courts must apply the same period of limitation in arbitration that would govern if an action were brought on the claim being arbitrated. . . . Under the New York borrowing statute (CPLR 202), a securities fraud claim arising outside [New York] is subject to the limitations periods of the jurisdictions where the injury occurred — generally, the place where the investors resided and sustained the economic impact of the loss. . . ." Id., 808.[5]
Furthermore, the state where the action is pending has the right to apply its own period of limitations to the claim, even though the state is applying the substantive law of a sister state. See Sun Oil Co. v. Wortman, 486 U.S. 717, 727,108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).
Based on the causes of action asserted in the defendant's statement of claim filed with the NYSE, it appears that the CT Page 10857 following statutes of limitations may apply to the defendant's claims: (1) the three year period provided by General Statutes § 52-577 (for the defendant's breach of fiduciary duty and fraud claims); (2) the three year period provided by General Statutes § 52-581(a) (for the defendant's breach of contract claims founded upon the alleged breach of an oral express contract that was not reduced to writing); and (3) the six year period provided by General Statutes § 52-576 (for the defendant's breach of contract claims that are based upon the alleged breach of a written contract). The court further notes that the defendant's claims based on the plaintiffs' alleged violations of Federal securities laws would be subject to a "one-year-after-discovery/no-later-than-three-years" limitation period.Dodds v. Cigna Securities, Inc., 12 F.3d 346, 349 (2d Cir. 1993).
In the present case, the defendant raises fraudulent concealment issues in his statement of claim filed with the NYSE. The statute of limitations may be tolled if "`there is something tantamount to a fraudulent concealment cause of action.'" Hamilton v. Smith, 773 F.2d 461, 467-68 (2d Cir. 1985), citing Kennedy v. Johns-Manville Sales Corp. , 135 Conn. 176,178, 62 A.2d 771 (1948). General Statutes § 52-595
provides that:
 If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.
As a threshold matter, the plaintiffs' application must be denied insofar as it seeks to enjoin the defendant from proceeding to arbitration on his claims with respect to those shares of the ML-Lee L.P. limited partnership which were purchased by the decedent on November 9, 1989. Assuming arguendo that the various three year statutes of limitations began to run as of the purchase date (and without having to consider any allegations of fraudulent concealment), the defendant timely commenced the arbitration within three years of the purchase date of that limited partnership. (The arbitration was commenced by demand to the NYSE on June 18, 1992.)
Nevertheless, the plaintiffs, in their application seek to CT Page 10858 enjoin the defendant from proceeding to arbitration on his claims with respect to the ten remaining limited partnerships. As previously stated, the five limited partnerships purchased between August 11, 1983 and May 1, 1986 (JMB Properties L.P.; MLH Realty L.P.; MRI Properties L.P.; those shares of the Oxford L.P. purchased on September 18, 1985; and MRI Fund III L.P.) are barred by the substantive eligibility requirement of NYSE Rule 603. Thus, the ensuing discussion is limited to the plaintiffs' application to enjoin the defendant from proceeding to arbitration with respect to the following limited partnerships: (1) SCA Tax Exempt L.P., purchased on June 18, 1986; (2) ML Delphi L.P., purchased on October 8, 1986; (3) those shares of the Oxford L.P. that were purchased on November 19, 1986; (4) those shares of the ML-Lee L.P. that were purchased on August 13, 1987; (5) Arvida L.P., purchased October 6, 1987; and (6) Equitable Capital L.P., purchased July 18, 1988.
The defendant argues that the plaintiffs concealed their misrepresentations by stating in the monthly account statements that were sent to the decedent that the "estimated market value" of the limited partnerships were equivalent to their original purchase prices, while the actual market value of the limited partnerships had declined substantially. The plaintiffs counter that the decedent had constructive notice of the characteristics of the limited partnerships by virtue of the statements contained in the prospectuses and offering materials which were supplied to the decedent.
In addressing the fraudulent concealment issue with respect to investments, courts have held that prospectuses constitute constructive notice of the risks associated with a particular investment; Dodds v. Cigna Securities, Inc., supra, 12 F.3d 351; and that an investor cannot justifiably rely on statements made by brokers when they have received prospectuses which warn of such risks. Brown v. E.F. Hutton Group, 991 F.2d 1020, 1033
(2d Cir. 1993). An investor is placed on inquiry notice when there is a disparity between the disclosures in a prospectus and the oral statements of a broker regarding the safety or potential performance of an investment. Dodds v. CignaSecurities, supra, 12 F.3d 350. An investor may also be on constructive or inquiry notice when they receive statements or reports which disclose "the adverse information of which they later complain." Dodds v. Cigna Securities, Inc., supra, 12 F.3d 351. Thus, inquiry notice, which commences the running of the statute of limitations, "is triggered by evidence of the CT Page 10859 possibility of fraud. . . ." Kennedy v. Josephthal Co.,814 F.2d 798, 802 (1st Cir. 1987). "[T]he clock begins to tick when a plaintiff senses `storm warning,' not when he hears thunder and sees lightening." Jensen v. Snellings, 636 F. Sup. 1305,1309 (E.D.La. 1986), affirmed in relevant part, 841 F.2d 600
(5th Cir. 1988).
In the present case, the defendant's claim of fraudulent concealment is predicated in part on the plaintiffs' alleged failure to disclose "adverse" information concerning the fair market value of the limited partnerships in the monthly reports that were sent to the decedent. A review of the monthly reports attached as exhibits to the verified complaint shows that the value of the limited partnerships was listed as their respective purchase prices. The defendant contends that the plaintiffs' failed to disclose that the fair market values of the limited partnerships was substantially less than their respective purchase prices. The defendant also contends that the plaintiffs failed to inform the decedent with respect to the suitability of investing in limited partnerships (i.e., in light of the decedent's age, knowledge, objectives and financial condition) and with respect to the illiquidity of these investments.
The court, in addressing the statutes of limitations and fraudulent concealment issues, must determine "when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud." Dodds v. Cigna Securities, Inc., supra, 12 F.3d 350. "`[W]hile the court is empowered to decide threshold issues, including Statute of Limitations issues . . . the scope of this power should be applied narrowly and substantive issues should be left to the arbitrator'. . . . `[W]hile factual issues concerning the Statutes of Limitations may be tried by the court . . . in the instant case, these issues are intertwined with the ultimate substantive issues' . . . . Due to the continuing nature of these claims and the uncertainty concerning the date of the occurrence or event giving rise to these claims, leaving these issues to the arbitrator will permit a more efficient resolution." (Citation omitted.) Matter of Prudential Securities, Inc., 614 N.Y.S.2d 638,639 (App.Div. 1994).
A review of the sample prospectus attached to the verified complaint reveals that the prospectus contains warnings with respect to the risks and illiquidity of the particular limited CT Page 10860 partnership. While this type of disclosure is adequate for purposes of putting an investor on inquiry notice for purposes of commencing the running of the statute of limitations, there is no evidence with respect to whether the decedent ever received the prospectus. In addition uncertainty also exists as to the dates when the defendant (or the decedent) should have been on inquiry notice, based on the disparities between the values of the limited partnerships as reported in the monthly statements sent to the decedent (i.e., the purchase prices of the limited partnerships) and the actual or fair market values of these investments.[6] In the absence of an adequate factual record, the statutes of limitations issues are better left to the arbitrators for resolution in the context of a hearing on the merits. Thus, the defendant's claims with respect to the limited partnerships that are not barred by the substantive eligibility requirements of NYSE Rule 603 are not patently time-barred.
The plaintiffs contend that the defendant's demands for punitive damages and attorney fees are not arbitrable because New York law precludes the arbitral award of such damages. As previously stated, New York law governs the parties' arbitration agreement and its enforcement. New York law does not provide for the arbitral award of punitive damages under any circumstances, Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 356,386 N.Y.S.2d 831, 832 (1976), and New York law does not provide for the arbitral award of attorneys' fees unless specifically provided for in the parties' agreement. MKC Development Corp.v. Weiss, 612 N.Y.S.2d 946, 946 (App.Div. 1994); CBAIndustries, Inc. v. Circulation Management, Inc., 578 N.Y.S.2d 234,235 (App.Div. 1992).
While New York substantive law is relatively clear with respect to arbitral awards of punitive damages, the United States Supreme Court ruled, in Mastrobuono v. Shearson LehmanHutton, 514 U.S. ___, 115 S.Ct 1212, 131 L.Ed.2d 76 (1995), that the presence of a New York choice of law provision in a brokerage's customer agreement form does not automatically preclude an arbitral award of punitive damages. Specifically, the Court held that where the customer agreement "contains no express reference to claims for punitive damages;" id., 1216; a choice of law provision "encompass[es] substantive principles that New York courts would apply, but [does] not include special rules limiting the authority of the arbitrators," such as New York's rule against arbitral awards of punitive damages. Id., CT Page 10861 1219. In so doing, the Court noted that "it seems unlikely that petitioners were actually aware of New York's bifurcated approach to punitive damages, or that they had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right." Id.
The customer agreement in the present case is similar to the agreement in Mastrobuono, in that it makes no specific reference to the availability or unavailability of punitive damages. Consequently, the presence of a choice of law clause which chooses New York law merely creates an ambiguity with respect to the availability of an arbitral award of punitive damages. Thus, in light of this ambiguity, the court will not at this time enjoin the defendant from seeking an arbitral award of punitive damages.
Under New York law, arbitrators cannot award attorneys' fees unless such an award is specifically provided for in the parties' agreement. MKC Development Corp. v. Weiss, supra,612 N.Y.S.2d 946. While the Mastrobuono case is silent with respect to the arbitral awarding of attorneys' fees, it may be read to suggest that arbitrators, acting pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, have the power to award attorneys' fees.
In addressing the effect of the Mastrobuono case on New York law with respect to arbitral awards of attorneys' fees, the court in PaineWebber, Inc. v. Richardson, United States District Court, Southern District of New York, Docket No. 3104 (AGS) (April 21, 1995, Schwartz, J.) held that:
 enforcement of New York arbitration law with respect to arbitral awards of attorneys' fees under the choice of law provision in respondent's customer agreement does not deprive him of an "important substantive right" the waiver of which he could not have foreseen in signing the customer agreement. First, a party to an agreement cannot under our system of laws ordinarily assume that they will receive an award of attorneys' fees if that party prevails . . . absent explicit provision for such an award by separate agreement or by statute. . . . Second, to apply Mastrobuono literally to the issue of attorneys' fees . . . would in fact work an injustice upon unsuspecting customers of brokerage firms. . . . CT Page 10862
Id., 1995 WL 236722 (S.D.N.Y.) at 4.
In the present case, the parties' agreement does not provide for the award of attorneys' fees. In the absence of such a clause in the agreement, this court adopts the holding inPaineWebber, Inc. v. Richardson, supra, and enjoins the defendant from seeking an arbitral award of attorneys' fees on the grounds that: (1) attorneys' fees are not an "important substantive right" as defined in the Mastrobuono case; (2) attorneys' fees are generally not available in the absence of either a statute or an agreement which permits such an award; and (3) the availability of attorneys' fees may actually work an injustice on the defendant if the arbitrators should find in favor of the plaintiffs.
CONCLUSION
With respect to arbitrability and substantive eligibility requirements, "the harm to a party would be per se irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel a party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority." PaineWebberv. Hartmann, supra, 921 F.2d 515. In the present case, the plaintiffs would suffer irreparable harm per se if they were forced to arbitrate the issue of arbitrability, or were forced to arbitrate patently non-arbitrable claims. Furthermore, it is likely that the plaintiffs would prevail on the merits with respect to those claims which are barred by NYSE Rule 603. Thus, the court grants the plaintiffs' application for a temporary injunction with respect to the five limited partnerships that were purchased prior to June 18, 1986, on the ground that these investments (purchased between August 11, 1987 and June 18, 1986) are barred by the substantive eligibility requirements of NYSE Rule 603.
The plaintiffs' request for injunctive relief, however, is denied insofar as it seeks to enjoin the defendant from proceeding to arbitration on his claims with respect to the limited partnership that the decedent purchased on November 9, 1989. The parties are directed to proceed to arbitration with respect to this claim, as it was timely commenced within all of the applicable limitations periods. CT Page 10863
The court denies the plaintiffs' application insofar as it seeks to enjoin the defendant from proceeding to arbitration on his claims with respect to the limited partnerships which were purchased on or after June 18, 1986. These claims are not barred by the substantive eligibility requirements of NYSE Rule 603, and the plaintiffs have not adequately demonstrated the likelihood of success on the merits with respect to their statutes of limitations defenses.
The plaintiffs' application for a temporary injunction is denied with respect to the defendant's claim for punitive damages on the ground that such a claim is not patently non-arbitrable, and on the ground that the plaintiffs have not demonstrated that they are likely to succeed on the merits. However, the defendant is enjoined from presenting a claim for attorneys' fees to the arbitrators because of the absence of a clause in the arbitration agreement that specifically allows for such an award.
In accordance with the foregoing, the defendant's motion to dismiss is denied and the plaintiffs' application is granted in part and denied in part.
/s/ West, J. WEST